IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BARRY RIDDICK, | ) | Case No. 1:20-CV-1000 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| S&P DATA OHIO, LLC, et.al., | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Barry Riddick, proceeding *pro se*, claims that he was subject to a hostile work

environment while working at S&P Data Ohio, LLC ("S&P Data") and was unlawfully

terminated from his job there based on his age and gender.  He seeks relief under the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1); Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000d; 42 U.S.C. § 1983, and Ohio state law.  ECF

Doc. 21.  On the other hand, the defendants individually and jointly claim that all of Riddick's

claims fail as a matter of law and demand summary judgment.  ECF Doc. 31; ECF Doc. 32.

Riddick has responded and the defendants jointly replied.  ECF Doc. 51; ECF Doc. 53.

Also pending before the court are Riddick's motion to hold Joy Gadberry and William

Pipkins in contempt and his motion for hearings on my order denying Riddick's earlier motion to

reopen discovery and his contempt motion.  ECF Doc. 41; ECF Doc. 43.  Further, in addition to

S&P Data, Gadberry, and Pipkins, Riddick named "John Doe,"[1] Miquel Snyder, David Walker, and Alex Moore as defendants.  ECF Doc. 21 at 1-2.  On October 29, 2021, the court ordered Riddick to show cause as to why he had failed to serve John Doe, Snyder, Walker, and Moore. ECF Doc. 54.  On November 12, 2021, Riddick responded.  ECF Doc. 55.

For the following reasons, Riddick's motions to hold Gadberry and Pipkins in contempt and for hearings are DENIED.  In regard to the motions for summary judgment, I recommend that: (1) S&P Data's and Gadberry's and Pipkin's motions for summary judgment be GRANTED; and (2) "John Doe," Snyder, Walker, and Moore be dismissed for lack of timely service.

## I.   Procedural History

On January 29, 2021, Riddick filed a First Amended Complaint, alleging claims under Ohio and federal law for a hostile work environment, age and gender discrimination (collectively, "Count 1"), and civil conspiracy ("Count 2"), arising from his employment at and termination from S&P Data.  ECF Doc. 21 at 7-10.  Riddick asserted that he was a 57-year-old, heterosexual man.  ECF Doc. 21 at 2, 6-8.  Liberally construed, he argued that S&P Data had an environment supportive of the LGBT community and, while working, he was called various names that he found to be offensive, the combination of which he contended created a hostile work environment; and he claimed he was discriminated against because of his age and gender by his unlawful termination.  ECF Doc. 21 at 5-8.  He also argued that Gadberry, Pipkins, and the remaining defendants conspired to unlawfully terminate him.  ECF Doc. 21 at 8-9.

---

[1] In his first complaint, Riddick named and attempted to serve "John Doe (Miquel)."  ECF Doc. 1, ECF Doc. 6.  Service was not perfect as to "John Doe (Miquel)", but Riddick filed an amended complaint dropping defendant "John Doe (Miquel)" and adding "John Doe" and "Miquel Snyder."  *See* ECF Doc. 11, ECF Doc. 21.  Because of the change in defendants, I will not construe Riddick's attempt at serving "John Doe (Miquel)" as applying to either "John Doe" or "Miquel Snyder."

S&P Data and Gadberry and Pipkins were served with Riddick's initial complaint and answered his amended complaint. ECF Doc. 11; ECF Doc. 22. However, "John Doe," Snyder, Walker, and Moore, who were added as defendants with Riddick's amended complaint, were never served. ECF Doc. 21; *see generally* CM/ECF for N.D. Ohio Case No. 1:20-CV-1000.

S&P Data and Gadberry and Pipkins now seek summary judgment. ECF Doc. 31; ECF Doc. 32.[2] S&P Data argues that it is entitled to summary judgment because: (1) Riddick has failed to demonstrate a hostile work environment existed; (2) he has failed to present direct evidence of discrimination; (3) he has failed to establish *prima facie* claims of age and gender discrimination; (4) it had a legitimate, non-discriminatory reason for terminating Riddick; (5) Riddick cannot show that its reason was pretextual; and (6) a corporation cannot, as a matter of law, conspire with its employees to establish a civil conspiracy. ECF Doc. 31 at 13-25.

Gadberry and Pipkins also contend that they are entitled to summary judgment for largely the same reasons. *See* ECF Doc. 32. Their arguments differ, however, in that Gadberry and Pipkins contend: (1) they cannot be sued as individuals under Title VII and the ADEA and are only potentially liable under Ohio law for their own personal discriminatory acts; and (2) Riddick's allegations regarding a civil conspiracy are too vague and conclusory to establish a claim, and he has not adequately demonstrated an underlying unlawful act. ECF Doc. 32 at 6-7, 10-12.

After being served with the motions for summary judgment, Riddick moved to stay his response in order to pursue more discovery. ECF Doc. 36. I construed the filing as a motion to reopen discovery and stay the case and denied it. ECF Doc. 39. After the order, Riddick filed a "Reply/Request for Reconsideration" of his motion to stay. ECF Doc. 40. He then moved to

---

[2] The parties' legal arguments regarding summary judgment will be discussed more fully below.

have a hearing on his request for reconsideration, contending he was prejudiced by the court

ruling before his reply was filed.  ECF Doc. 43 at 1-2.  He also objected to the order on the same

grounds.  ECF Doc. 46.  Additionally, Riddick has moved to hold Gadberry and Pipkins in

contempt, (ECF Doc. 41) and, in the same motion seeks a hearing on his request for

reconsideration, and moved to hold a hearing on his contempt motion (ECF Doc. 43).  S&P Data,

Gadberry, and Pipkins have opposed the contempt motion.  ECF Doc. 42.

Thereafter, Riddick responded to the motions for summary judgment, contending that

summary judgment is premature, as he requires more time for discovery, and reiterates the

arguments in his motion for contempt and for hearings.  *See*  ECF Doc. 52.[3]  S&P Data,

Gadberry, and Pipkins have jointly replied, asserting that Riddick's opposition fails to

demonstrate that a genuine issue of material fact exists.  ECF Doc. 53.

Subsequent to the parties' filings, I directed Riddick to show cause as to why "John

Doe," Snyder, Walker, and Moore should not be dismissed under Fed. R. Civ. P. 4(m) for lack of

timely service.  ECF Doc. 54.

## II.    Motions for Contempt and Expedited Hearings

Riddick moves the court to impose civil and criminal contempt sanctions against

Gadberry and Pipkins for making allegedly perjurious statements in their declarations in support

---

[3] Even though Riddick's response does not contain any substantive discussion of the motions for
summary judgment, we are nevertheless obligated to review the merits of the motions based on the
evidence properly before us under Fed. R. Civ. P. 56.  *El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008);
*FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630(6th Cir. 2014) (holding that, where the opposing party
failed to file a brief in response to a motion for summary judgment, "Even [when] a party 'offer[s] no
timely response to [a] [] motion for summary judgment, the District Court [may] not use that as a reason
for granting summary judgment without first examining all the materials properly before it under Rule
56(c)'" (quoting *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979)).  Because the court has Riddick's
amended complaint allegations, excerpts from his deposition submitted by S&P Data, Gadberry, and
Pipkins, and knows Riddick opposes summary judgment, in discussing the parties' more specific
arguments, I will construe Riddick's opposition as asserting the contentions as they are presented in his
deposition and consistent with his complaint.  *See* ECF Doc. 31-3; ECF Doc. 32-3.

of both motions for summary judgment and other filings.  ECF Doc. 41 at 1-5.  Specifically,

Riddick points to: (1) Gadberry's and Pipkins's statements in their declaration that Moore "may

have" been present during the meeting in which Riddick was terminated but he "played no role

in the decision;" (2) Gadberry's response to Riddick's interrogatories that she played calls during

the termination meeting; and (3) Gadberry's response to a request for admission that Moore was

African American.  *See* ECF Doc. 41 at 2-3.

Gadberry and Pipkins oppose the motion, contending that Riddick has failed to show that

the statements were knowingly false or material to the proceedings.  ECF Doc. 42 at 1-3.

Additionally, they argue that Gadberry truthfully acknowledged that Moore was African

American.  ECF Doc. 42 at 3.

Riddick replies by reiterating his argument and summarily stating that "[based on]

Defendants' failure to include Alex Moore's name within [the] Initial Disclosure, Defendants

were set upon keeping Alex Moore's identity concealed."  ECF Doc. 45 at 1.  He asserts that the

defendants must file counter-affidavits to refute his statements in support of perjury and

reiterates his request for a hearing.  ECF Doc. 45 at 1-3.  Lastly, Riddick appears to assert new

grounds for his contempt motion, contending that Gadberry and Pipkins perjured themselves by

stating that Riddick violated the call procedures and that Dewayne Grant possibly came to his

termination meeting, as the latter was factually impossible.  ECF Doc. 45 at 2-3.

Riddick has also separately moved for a hearing both on the motion for contempt and the

denial of his motion to stay the motions for summary judgment.  ECF Doc. 43.

In order to protect the court's authority to enforce its orders, protect the authority and

dignity of the court, and assure the administration of justice, the courts rely on their contempt

power.  *See Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911) ("The power of

5

courts to punish for contempt is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law"); *NLRB v. Cincinnati Bronze, Inc.,* 829 F.2d 585, 590-91 (6th Cir. 1987).  To establish a civil contempt violation, the movant bears the burden of proving by clear and convincing evidence that the non-moving party "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *See Elec. Workers Pension Trust Fund of Local Union # 58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (citing *Cincinnati Bronze*, 829 F.2d at 591).

In contrast, a motion to strike may argue that evidence relied upon in support of or opposition to a motion for summary judgment is inadmissible.  Fed. R. Civ. P. 56(c)(2); *see, e.g., Cary v. Cordish Co.*, 31 F. App'x 401, 405-06 (6th Cir. 2018) (a district court may refuse to consider inadmissible hearsay); *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006) (sham affidavits contradicting prior sworn testimony may be inadmissible at the summary judgment stage).  Rule 56 provides that affidavits or declarations used to support or oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Moreover, Rule 56(h) provides that:

> If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court – after notice and a reasonable time to respond – may order the submitting party to pay the other party the reasonable expenses . . . incurred as a result. An offending party of attorney may also be held in contempt or subject to other sanctions.

Courts have found "bad faith" under Rule 56 when "affidavits contained perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the case."  *See Sutton v. United States SBA*, 92 F. App'x 112, 118 (6th Cir. 2003) (internal quotation marks omitted).  The decision whether to impose sanctions is within the court's discretion.  *First*

*Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510 (6th Cir. 2002).  And sanctions under Rule 56 are "rare" and are reserved for "egregious" conduct."  *TCF Inventory Finance, Inc. v. Northshore Outdoor, Inc.*, No. 1:11-CV-0085, 2012 U.S. Dist. LEXIS 91997, at *16 (N.D. Ohio, July 3, 2012).  Similarly, striking material is "a drastic remedy that should be used sparing and only when the purposes of justice require."  *Driving School Assoc. of Ohio v. Shipley*, No. 1:92-cv-83, 2006 U.S. Dist. LEXIS 66018, at *2 (N.D. Ohio Sept. 15, 2006).

Although cast in terms of contempt, because Riddick's motion seeks to have the court disregard Gadberry's and Pipkins's declarations, impose sanctions, and is not explicitly based on the violation of a court order, I will construe it as a motion to strike under Rule 56(h).  Fed. R. Civ. P. 56; *Sutton*, 92 Fed. App'x. at 118.

I find that Gadberry and Pipkins statements do not warrant sanctions under Rule 56(h).  The heart of Riddick's contention rests upon whether Moore was present during his termination meeting and was involved in that decision.  *See* ECF Doc. 41 at 2-3.  Riddick's assertion that Gadberry's and Pipkins's statements on the issue were perjurious is unavailing for two reasons.  First, it is insufficient for Riddick to rely only on his own statements made in an affidavit in support of his motion to reopen discovery to support his assertion that Gadberry and Pipkins have lied under oath.  *See Orlowski v. Bates*, No. 2:11-CV-1396, 2015 U.S. Dist. LEXIS 142139, at *32 (W.D. Tenn. Oct. 20, 2015) (finding that the defendants' allegations of perjury, supported by their statements alone, was insufficient evidence upon which to impose sanctions); *see generally* ECF Doc. 41.  Second, Gadberry and Pipkins admit that Moore "may have" been present during the meeting at which Riddick was terminated.  ECF Doc. 31-2 at 11; ECF Doc. 31-4 at 6.  They merely contest whether he played a role in Riddick's termination.  This concessionary language plainly prevents the statements from being characterizes as blatant or

egregious falsehoods that would warrant sanctions. *See TCF Inventory Finance, Inc.*, 2012 U.S. Dist. LEXIS 91997, at *16; *Driving School Assoc. of*, 2006 U.S. Dist. LEXIS 66018, at *2. Riddick's contention – that the omission of Moore's name from defendants' initial disclosure of individuals with potentially discoverable information was an attempt at concealment – does not render the already-contested issue of Moore's role in Riddick's termination somehow more egregious, and Riddick has not presented any evidence to support that such an omission was made in bad faith. *See Sutton*, 92 F. App'x at 118.

With regard to Riddick's other asserted instances of perjury, his motion also fails. Gadberry's statement regarding Moore's race is immaterial to Riddick's claims, and Riddick's remaining contentions were raised for the first time in reply and are, therefore, waived. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (recognizing that issues raised for the first time in reply briefs are waived). Additionally, because the Gadberry and Pipkins opposed Riddick's motion, counter-affidavits are unnecessary to further narrow the dispute. *See Rogers v. Webster*, 776 F.2d 607, 611 (6th Cir. 1985) (holding that in civil contempt proceedings the trial court may require counter-affidavits to narrow the disputed issues). Accordingly, Gadberry's and Pipkins's conduct does not constitute the rare and egregious actions warranting sanctions and Riddick's motion is DENIED.

As to Riddick's motion for hearings, because Riddick has taken advantage of the Federal Rule of Procedure 72(a)'s provision for challenging a magistrate judge's order by objecting to them and because a hearing is not necessary to resolve his contempt allegations, Riddick's motion for expedited hearings is also DENIED. *See* Fed. R. Civ. P. 72(a); *Jones v. Northcoast Behavioral Healthcare Sys.*, 84 F. App'x 587, 599 (6th Cir. 2003) (holding that courts have

discretion in controlling their dockets, absent a clear showing of actual and substantial prejudice to the complaining litigant); ECF Doc. 46.

### III.    Motion for Summary Judgment

#### A.    Undisputed Facts[4]

S&P Data operated a call center that contracted out its employees to make calls on behalf of various customers, including Verizon. ECF Doc. 31-1 at 1.[5]  Riddick, a 57-year-old, heterosexual male, started with S&P Data on September 16, 2019.  ECF Doc. 31-3 at 3, 20; ECF Doc. 52 at 6.  He was hired to work in the call center and contact businesses about their interest in Verizon products, as a "fronter," who would generate sales lead.  ECF Doc. 31-2 at 1-2; ECF Doc. 31-3 at 5-6.  He was trained by Snyder.  ECF Doc. 31-3 at 5.

"Fronters" were to reach the "decision maker" within the business, who had the authority to purchase Verizon products, and then they were to transfer the calls to the "closers" to make the final sale.  ECF Doc. 31-2 at 1; ECF Doc. 31-3 at 11.  Fronters were to follow both the "call tree," which was the process of trying to reach the decision maker, and a call script, when speaking with customers.  ECF Doc. 31-2 at 1-2.  The call script detailed such things as, how the fronter should introduce himself to whoever answered the business's phone, ask to speak with the decision maker, introduce the decision maker to Verizon's products, inquire as to what type of products or services the decision maker's company many need, and transition the call to the closer.  *See* ECF Doc. 31-2 at 4-5; ECF Doc. 31-3 at 9-12.

---

[4] The facts recited in this section are undisputed or established by Rule 56 evidence.
[5] S&P Data and Gadberry and Pipkins attached the same evidence to each of their motions for summary judgment.  *See* ECF Doc. 31; ECF Doc. 32.  For ease, I will reference only those attachments to S&P Data's motion.

Riddick did not always follow the call script. ECF Doc. 31-2 at 2; ECF Doc. 31-3 at 10-11. He had seen Latasha Wilford[6], who also worked at the call center, also not follow the call script. ECF Doc. 31-3 at 12-13. Riddick was aware that on one occasion, Dewayne Grant, a team leader with S&P Data, approached Wilford, who abruptly quit after the conversation. ECF Doc. 31-3 at 12-13, 16. Supervisors monitored the calls to review whether there was something a call center employee could improve or if they were straying from the call tree or script. ECF Doc. 31-3 at 14. Riddick was coached on October 8, 2019, about following the call tree and getting to the company's decision maker. ECF Doc. 31-2 at 2; ECF Doc. 31-1 at 13.

On October 9, 2019, Riddick received an "Employee Disciplinary Notice." ECF Doc. 31-2 at 8; ECF Doc. 31-3 at 21. It stated:

> On 10/8/2019, Barry Riddick was placed on a Final for not following call flow procedure and not being receptive to coaching. It was explained at that time if Barry was witnessed veering from the Verizon Program compliance, further disciplinary action would follow. Today, on 2 calls Barry was witnessed not following the call flow and not filing through the phone tree as coached. . . . Barry Riddick is being removed from Verizon and terminated from SP Data for noncompliance of program requirement.

ECF Doc. 31-2 at 8. The notice also indicated that Riddick had been coached on five prior occasions, including October 8, about following the "call flow.". ECF Doc. 31-2 at 8.

Gadberry, S&P Data's operation manager, and Pipkins, a team leader at S&P Data, met with Riddick on October 9, to terminate him. ECF Doc. 31-2 at 2; ECF Doc. 31-4 at 1. For privacy, they met with Riddick in the office of David Walker, S&P Data's client services manager, who was present during the meeting. ECF Doc. 31-2 at 2-3; ECF Doc. 31-4 at 1. At the meeting, several of Riddick's calls were played. ECF Doc. 31-2 at 2-3; ECF Doc. 31-3 at 21-22; ECF Doc. 31-4 at 1. Moore, S&P Data's director of operations, "may have" been

---

[6] Riddick does not identify the woman's name, but S&P Data represents that the individual was Latasha Wilford. ECF Doc. 31 at 17.

present during the meeting.  ECF Doc. 31-2 at 3; ECF Doc. 31-3 at 19; ECF Doc. 31-4 at 2.

Riddick was terminated at the meeting.  ECF Doc. 31-2 at 3; ECF Doc. 31-3 at 19; ECF

Doc. 31-4 at 2.  At least Pipkins and Gadberry made the decision to terminate Riddick's

employment.  ECF Doc. 31-2 at 3; ECF Doc. 31-3 at 19-20; ECF Doc. 31-4 at 2.

 During his short time at S&P Data, a female co-worker called Riddick a "man's man."

ECF Doc. 31-3 at 8, 15-16.  Another "older woman" co-worker called him a pimp and a cripple.

ECF Doc. 31-3 at 9, 14-15.  The same woman also called him "over the hill."  ECF Doc. 31-3

at 16.  Riddick never reported these comments to S&P Data.  ECF Doc. 31-3 at 15.  He did not

remember the names of the women who made the comments, but he did recall that the older

woman had worked there for several years.  ECF Doc. 31-3 at 14-16.

### B.   Applicable Legal Standards

### 1.   Summary Judgment Standard

 Summary judgment is proper when "the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ.

P. 56(a); *Maben v. Thelen*, 887 F.3d 252, 258 (6th Cir. 2018).  The moving party must

demonstrate "the basis for its motion, and identify[] those portions of the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, which it

believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 324 (1986) (quotation omitted).  The nonmoving party may not simply rely on his

pleadings, but "must set forth specific facts showing that there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted); *see also Betkerur

v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996) (The court does not have the

responsibility to search the record *sua sponte* for genuine issues of fact).  A reviewing court must

11

determine whether the evidence that the nonmoving party relies upon "presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

In evaluating the evidence presented on a summary judgment motion, courts must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255. Nonetheless, a court need not accept unsupported or conclusory statements as true. *See Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."). A "claim will only survive summary judgment if the nonmovant can adduce more than a scintilla of evidence in support of the claim; it cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact." *Harvey v. Campbell Cty.*, 453 F. App'x 557, 561-62 (6th Cir. 2011).

### 2.  Liberal Construction for *Pro Se* Filings

Filings by *pro se* litigants are liberally construed and held to less stringent standards than formal filings by lawyers. *El Bey*, 530 F.3d at 413. Nevertheless, the court may not use liberal construction to create arguments on behalf of a litigant that are plainly not present in the litigant's briefing. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (noting that holding otherwise would "transform the district court . . . to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party").

### C.  Analysis

### 1.  Count 1: Hostile Work Environment & Discrimination Claims

The ADEA makes it unlawful for employers to discharge any individual because of his age. 29 U.S.C. § 623(a)(1). Similarly, Title VII forbids discrimination based on protected

classes, including gender. 42 U.S.C. § 2000e-2(a); *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1741-1742 (2020). Based on this similarity, the standards, methods, and manner of proof established in Title VII case law have been held to be persuasive authority in cases under the ADEA, and courts regularly employ the law under each interchangeably. *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996).

Because Ohio courts rely on cases interpreting Title VII and the ADEA for guidance, this court may review Riddick's gender and age discrimination claims under Ohio Rev. Code § 4112 simultaneously with his federal claims. *See Rice v. Cent. Ohio Youth Ctr.*, No. 2:14-CV-1169, 2016 U.S. Dist. LEXIS 195134, at *16 (S.D. Ohio Aug. 17, 2016) (reviewing a plaintiff's Ohio and federal discrimination claims under Title VII and the ADEA simultaneously).

### a. Individual Liability for Count 1

Gadberry and Pipkins assert that they cannot be held individually liable under Title VII and the ADEA and, thus, are entitled to summary judgment on Riddick's federal discrimination claims. ECF Doc. 32 at 10. Additionally, they contend that, Riddick has failed to provide evidence of any discriminatory conduct by Gadberry or Pipkins, as required for their personal liability under Ohio law and, thus, summary judgment must be granted. ECF Doc. 32 at 10-11. Riddick has not addressed this claim in his deposition or response. *See* ECF Doc. 31-3; ECF Doc. 52.

Individuals may not be held personally liable under Title VII or the ADEA. *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). Additionally, at the time of Riddick's termination in October 2019, Ohio Rev. Code § 4112.01(A)(2) defined "employer" as "any person employing four or more persons within the state, and any person acting directly or

indirectly in the interest of an employer."[7]  Under Ohio law, individual supervisors and managers may only be held accountable for their own discriminatory conduct.  *Genaro v. Cent. Transp., Inc.*, 84 Ohio St. 3d 293, 1999-Ohio-353, 703 N.E.2d 782, 785 (Ohio 1999).  As a result, Riddick's Title VII and ADEA claims against Gadberry and Pipkins fail as a matter of law and they are entitled to summary judgment.  *See* Fed. R. Civ. P. 56(a); *Maben*, 887 F.3d at 258. However, Riddick's claims against them under Ohio law remain.

### b.  Hostile Work Environment

S&P Data contends that it is entitled to summary judgment on Riddick's hostile work environment claim based on age and gender discrimination.  ECF Doc. 31 at 13-18.  It contends that the four comments Riddick cites as hostile fail to establish a hostile work environment as a matter of law because: (1) all but one was not connected to his age or gender; and (2) all four comments taken together were too sporadic and not sufficiently threatening or humiliating to create an objectively hostile workplace.  ECF Doc. 31 at 14-17.  S&P Data contends that it had no knowledge of the comments, as Riddick never reported them, and, thus, it cannot be held liable for failing to take appropriate action.  ECF Doc. 31 at 17-18.  Further, Riddick's statements about feeling out of place, which he attributed to his gender and age, S&P Data argues are likewise insufficient because of their speculative and conjectural nature.  ECF Doc. 31 at 17.  Gadberry and Pipkins do not specifically address Riddick's hostile work environment

---

[7] This Court is aware that Ohio's legislature recently passed a bill amending Ohio Rev. Code § 4112.01(A)(2) with the intent that individuals, including supervisors, managers, and other employees, not be subject to individual liability for discriminatory employment practices precluded under Ohio Rev. Code § 4112.  *See* 2020 Ohio HB 352.  However, this bill was signed into law January 12, 2021 and became effective April 15, 2021, both dates occurring after Riddick was terminated.  *See id.*  Therefore, this change in law is immaterial to this Court's analysis.  *See also Whitman v. Int'l Paper Co.*, No. 5:20-CV-2781, 2021 U.S Dist. LEXIS 116684, at *6 n.1 (N.D. Ohio June 23, 2021) (finding that because the employee's termination occurred before the bill came into effect the amendment to Ohio Rev. Code § 4112 did not apply).

claim but do assert that he fails to present direct evidence of their involvement in the alleged discriminatory conduct.  *See generally* ECF Doc. 32 at 10-14.

Riddick contends that the supportive environment for the LGBT community at S&P Data and the comments that he was "over the hill," a pimp, a cripple, and a "man's man," created a hostile work environment.  *See* ECF Doc. 21 at 6-8; ECF Doc. 31-3 at 14-16.  He asserts that Snyder supported the LGBT community at S&P Data because he was close to those who were openly gay and Snyder himself seemed gay.  ECF Doc. 31-3 at 7-8.  Although not an organized community, Riddick contends that he felt like a "leper" at S&P Data, and it was his impression that S&P Data only liked to hire gay people.  ECF Doc. 31-3 at 8.  He felt this because "for the most part [the people] that were there, I couldn't identify with a young male.  I did not identify or see any young males that I could identify with when I was that age in the workplace."  ECF Doc. 31-3 at 8.

As to the names he was called, Riddick asserts that he thought being called a pimp was not funny and he did not know why the older woman called him that.  ECF Doc. 31-3 at 14-15.  But he believes she called him a cripple because he had a limp.  ECF Doc. 31-3 at 15.  Although derogatory, he did not take the "pimp" comment as "physical" and, as with being called a cripple, it upset him, but he did not complain about it.  ECF Doc. 31-3 at 15.  He argues that being called a "man's man" was offensive because it indicated he was gay and participated in homosexuality.  ECF Doc. 31-3 at 16.  Being called "over the hill," he acknowledges, was a "joking comment."  ECF Doc. 31-3 at 16.

To establish a hostile work environment claim, a plaintiff must show that: (1) he was 40 years old or older and a heterosexual male; (2) he was subject to unwelcomed harassment; (3) the harassment was based on his age or gender; (4) the harassment created a hostile work

environment; and (5) employer liability.  *See Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 411 (6th Cir. 2021).

A hostile work environment exists where the proposed harassment is "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment."  *Crawford*, 96 F.3d at 835 (quoting *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986)).  But conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment is beyond the reach of the discrimination laws.  *See Williams v. General Motors Corp.*, 187 F.3d 553, 566 (6th Cir. 1999).  In *Williams*, the Sixth Circuit explained that the above standard meant that "the focus of the objective/subjective inquiry should remain on (1) whether a reasonable person would find the environment objectively hostile, and (2) whether the plaintiff subjectively found the conduct 'severe or pervasive.'"  *Id.* at 568.

The "mere utterance of an . . . [e]phithet which engenders offensive feelings in an employee" is insufficient to establish severity and pervasiveness, rather the court must look to the totality of circumstances.  *Crawford*, 96 F.3d at 835.  This may include the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating or a "mere offensive utterance," and whether it unreasonably interfered with an employee's work performance.  *Roseman v. Int'l Union, UAW*, No. 20-2151, 2021 U.S. App. LEXIS 20908, at *9-10 (6th Cir. 2021) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).

Regarding the objective hostility requirement, the Sixth Circuit found the requirement met in reviewing an African American police officer's Title VII claim against his department.  *Austion v. City of Clarksville*, 244 F. App'x 639, 643-44 (6th Cir. 2007).  The court noted that a reasonable juror could find that the plaintiff's evidence of: (1) a letter from superiors referring to

the plaintiff and other African Americans who filed complaints as "complainers" and "disgruntled;" (2) a supervisor's reprimand for filing an complaint and calling it "disloyal" and "disrupting;" (3) a drive-by-shooting of a coworker's home, who was supportive of the plaintiff, and suspicions of intra-department racial motivation; (4) a noose hanging at the police department; and (5) racist remarks that the plaintiff was aware of, could constitute an objective hostile work environment. *Id.* at 652.

The Sixth Circuit has described the final prong of employer liability as whether the defendant "knew or should have known of the harassment, but failed to implement prompt and appropriate corrective action." *Blankenship v. Parke Care Ctrs.*, 123 F.3d 868, 872 (6th Cir. 1997) (internal quotation marks omitted).

S&P Data, Gadberry, and Pipkins are entitled to summary judgment on Riddick's hostile work environment claim. Fed. R. Civ. P. 56(a); *Maben*, 887 F.3d at 258. The parties do not dispute that Riddick was over 40 years old and a heterosexual male or that the comments made to him were unwelcomed. ECF Doc. 31-3 at 3, 20; ECF Doc. 52 at 6. S&P Data does contest whether the comments Riddick complains about constituted harassment because of his age or gender; but, because the I conclude that there is no genuine issue of material fact as to whether the work environment was hostile (the fourth prong) or about employer liability (the fifth prong), it is unnecessary to decide whether the comments were actually discriminatory. *Wyatt*, 999 F.3d at 411; ECF Doc. 31 at 15-16.

First, Riddick has not shown that he found the four comments and S&P Data's community sufficiently hostile to create a subjectively severe and pervasive harassment. As evidence of the discriminatory environment at S&P Data, Riddick points to S&P Data's supportive environment for the LGBT community and four comments: "pimp," "cripple," a

"man's man," and being "over the hill."  ECF Doc. 31-3 at 8-9, 14-18.  The community and comments, he argues made him feel discriminated against because of his heterosexual sexual preference, male gender, and age.  *See* ECF Doc. 21 at 7-8; ECF Doc. 31-3 at 17-18.

Riddick's subjective experience of S&P Data's environment could be a valid concern in determining whether a hostile work environment existed.  *Williams*, 187 F.3d at 568.  And looking at the comments accrued over the course of a month in isolation, they could feasibly constitute pervasive harassment.  However, Riddick undermined the severity of the comments by stating that he knew they were a joke, that he found them merely offensive, and that he did not take the comments as "physical."  ECF Doc. 31-3 at 14-16.  Further, he never stated that the comments made him alter his employment in any way.  *Roseman*, 2021 U.S. App. LEXIS 20908, at *9-10; *Crawford*, 96 F.3d at 835; *see generally* ECF Doc. 31-3.  Even taking the comments and environment together, Riddick's acknowledgement that he did not find the comments more than offensive is fatal to his claim; and he has failed to prove that he suffered any alteration in how he did his job as a result.  "Conduct that is merely offensive . . . is not actionable."  *Knox v. Neaton Auto Products Mfg., Inc.*, 375 F.3d 451, 459 (6th Cir. 2004).

Further, Riddick's subjective experience – alone – without proof of objective hostility, is insufficient to establish a claim.  *Williams*, 187 F.3d at 568.  Based on Riddick's acknowledgement that the comments were to be joking or were not physically harassing or threatening, a reasonable person would not find the four comments from two individuals coupled with general contentions regarding an LGBT-friendly environment as an objectively hostile or abusive environment.  *Id.* at 566-567.  Unlike in *Austion* where a reasonable juror could find objective and subjective physical or abusive harassment based on the plaintiff's evidence, Riddick's concessions render such a finding impossible.  *See Austion*, 244 F. App'x at 652.

Even if we assumed Riddick's evidence could demonstrate a hostile work environment, the defendants have shown that there is no genuine issue of material fact on their claim to have been unaware of the comments; and, for that reason alone, they cannot be held liable for the employees' behavior. Fed. R. Civ. P. 56(a); *Maben*, 887 F.3d at 258. Riddick acknowledged in his deposition that he never reported the comments. ECF Doc. 31-3 at 15. He also could not identify the individuals who made the offensive comments, stating only that the "old woman" had been there several years, and, thus, there is no evidence that they were part of S&P Data's management. ECF Doc. 31-3 at 14-16. Further, Riddick has not alleged that Gadberry or Pipkins should have been aware or were otherwise aware that the comments had been made. *See generally* ECF Doc. 31-3. With these admissions and without any evidence that S&P Data's management knew of the comments, Riddick has failed to create a genuine issue of material fact on the element of his claim that requires him to prove that S&P Data knew or should have known of the alleged wrongful conduct. *Blankenship*, 123 F.3d at 872.

Moreover, because Riddick has not alleged that Gadberry and Pipkins took any personal actions that contributed to the hostile work environment or, as discussed, knew that Riddick found the workplace to be subjectively hostile, no genuine issue of material fact exists on their lack of personal involvement. *Genaro*, 703 N.E.2d at 785. Accordingly, there is insufficient factual disagreement to require submission of the hostile work environment claim. *Anderson*, 477 U.S. at 251-52. And summary judgment must be granted.

### 2.      Age and Gender Discrimination

S&P Data contends that it is entitled to summary judgment on Riddick's age and gender discrimination claims. ECF Doc. 31 at 18-23. It argues that Riddick has not presented any direct evidence of discrimination, as he has not shown that either Gadberry or Pipkins were motivated

by his age or gender.  ECF Doc. 31 at 19-20.  S&P Data specifically notes that, in his deposition,

Riddick acknowledged that the calls he made on October 9 did not comply with the procedures.

ECF Doc. 31 at 19-20; ECF Doc. 31-3 at 22-27.  Further, S&P Data argues that Riddick failed to

establish a *prima facie* age discrimination claim.  ECF Doc. 31 at 20-23.  Specifically, S&P Data

contends that Riddick failed to show that he was qualified for the job, because he failed to meet

the employer's legitimate performance expectations.  ECF Doc. 31 at 20-21.  S&P Data also

argues that Riddick failed to show that circumstances gave rise to the inference of discrimination

because he did not show that he was replaced by someone younger or that a similarly situated

younger person was treated more favorably, making only bare unsupported allegations.  ECF

Doc. 31 at 21-23.  S&P Data asserts that Riddick's gender discrimination allegations fail to

establish a *prima facie* case for the same reasons.  ECF Doc. 31 at 23.  Lastly, S&P Data

contends that both discrimination claims fail because it had a legitimate, non-discriminatory

reason for terminating Riddick – his failure to follow the call procedures – and he cannot show

that those reasons were pretextual.  ECF Doc. 31 at 23-25.

Gadberry and Pipkins contend that they are also entitled to summary judgment on

Riddick's age and gender discrimination claims for essentially the same reasons identified by

S&P Data.  ECF Doc. 32 at 11-14.

Riddick contends that the same LGBT-friendly environment and comments that created a

hostile work environment resulted in him being discriminated against based on his age and

gender when he was unlawfully terminated.  *See* ECF Doc. 31-3 at 12-21.  Liberally construed,

he argues that S&P Data's support for the LGBT community and the discussion of his promotion

to closer before Gadberry's return demonstrate that his alleged call procedure violations were a

pretextual justification for his termination.  *See* ECF Doc. 21 at 8; ECF Doc. 31-3 at 12-13,

16-18.  Specifically, he argues that before Gadberry returned from leave/vacation, two managers had intended to promote him to "closer," his training was scheduled, and his call violations were not a problem, as Wilford had also violated the call procedures yet was only spoken too – not fired.  *See* ECF Doc. 21 at 8; ECF Doc. 31-3 at 12-13, 16-17.  Riddick asserts that the coaching he received on October 8 was "positive."  ECF Doc. 31-3 at 13, 18.  Riddick argues that when Gadberry returned, his violations of the call procedures suddenly became an issue, his training was delayed, and he was terminated before he could begin it.  ECF Doc. 31-3 at 16-18.  Riddick contends that Gadberry "took an exception" with him.  ECF Doc. 31-3 at 17.  He did not know why she did, but he "assum[ed] it was [his] age and [his] gender."  ECF Doc. 31-3 at 18.  He appears to argue that based on S&P Data's supportive environment for the LGBT community, Gadberry's dislike of him stemmed from his age and gender being different than others working there.  *See* ECF Doc. 31-3 at 17-18.  He also contends that there were no calls on October 9 in which he "did not follow . . . the call flow or the call tree based on the flow, based on the conversation of the – the communication with whomever it was."  ECF Doc. 31-3 at 21.

Discrimination claims under the ADEA and Title VII, based on circumstantial evidence, are analyzed under the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008).  Under the framework, a plaintiff must first establish a *prima facie* case of discrimination.  *Id.*  If shown, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision.  *Id.*  Once such a reason is articulated, the burden returns to the plaintiff to establish that the defendant's proffered reason was pretextual.  *Id.*

To establish a *prima facie* case of discrimination, a plaintiff must show that: (1) he was a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was

qualified for the position; and (4) that a person outside of the protected class was treated more favorably than him.  *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 481 (6th Cir. 2012). More specifically under the ADEA, the plaintiff must show that his age was the "but-for" cause of the termination.  *Gros v. FBL Fin. Servs.*, *Inc.*, 557 U.S. 167, 177 (2009).

The parties do not dispute that Riddick was a member of the protected classes at issue or that he suffered an adverse employment action.  ECF Doc. 31-2 at 3; ECF Doc. 31-3 at 3, 19-20; ECF Doc. 31-4 at 2.  Although it is disputed whether Riddick was qualified for the position, it is only necessary to examine the final prong because he has failed to identify a similarly situated individual who was treated more favorably.  ECF Doc. 31 at 20-21; ECF Doc. 31-3 at 12-13, 16-17.

To meet the fourth prong of discrimination claims, the claimant must show that a person outside of the protected class was treated more favorably, and that person must be "similarly situated in all respects."  *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001).  To be similarly situated means that "[t]he individuals with whom the plaintiff seeks to compare his[] treatment must have dealt with the same supervisors, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).  The Sixth Circuit later simplified this to the requirement that the employees be similarly situated in "all relevant respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

S&P Data, Gadberry, and Pipkins are entitled to summary judgment on Riddick's age and gender discrimination claims.  Fed. R. Civ. P. 56(a); *Maben*, 887 F.3d at 258.  Riddick has failed to offer evidence that an individual similarly situated to him was treated better and, thus, his

claim fails.  *Allen*, 545 F.3d at 394.  Liberally construed, Riddick points to Wilford as being similarly situated to him.  ECF Doc. 31-3 at 12-13.  He asserts that they were both failed to follow the call procedures but only he was fired.  ECF Doc. 31-3 at 12-13.  But Riddick has not made a sufficient showing that Wilford was actually similarly situated to him; he has offered no proof that she was (1) younger than him or had the same gender-related issues with the work environment; (2) had the same supervisor; or (3) had the same history of discipline.  *Mitchell*, 964 F.2d at 583.  Rather, Riddick assumed that because Wilford was spoken to by a supervisor after not following the call procedures, the supervisor must have been reprimanding her for that failure.  *See* ECF Doc. 31-3 at 12-13.  Riddick appears to argue that because she was only spoken to, rather than fired, it shows that his termination was pretextual.  But correlation does not equal causation.  Riddick failed to show that Wilford had the same disciplinary record he had or gender-related feelings regarding the environment and, as such, has not established that he was discriminated against because of his age or gender even if Wilford was similarly situated in all other areas.  *Majewski*, 274 F.3d at 1116; ECF Doc. 31-2 at 8.

Further differentiating Riddick from Wilford is the fact that she quit.  ECF Doc. 31-3 at 12-13.  Her decision to quit renders it impossible to say whether her employment would have been terminated for her noncompliance with the call procedures.  Accordingly, because Riddick failed to establish the required elements for a *prima facie* age or gender discrimination claim, the remainder of the *McDonnell Douglas* framework need not be discussed.  *Allen*, 545 F.3d at 394. Because there is no genuine issue of fact regarding Riddick's discrimination claims, summary judgment must be granted.  *Maben*, 887 F.3d at 258.

#### D.  Count 2: Civil Conspiracy

S&P Data contends that it is entitled to summary judgment on Riddick's civil conspiracy claim because a corporation cannot legally conspire with its employees.  ECF Doc. 31 at 20.

Gadberry and Pipkins also contend that they are entitled to summary judgment.  ECF Doc. 32 at 14-16.  They assert that Riddick bases the claim solely on barebones assertions and concludes from Walker's and Moore's presence during the termination meeting that they were involved in the decision.  ECF Doc. 32 at 15-16.  Moreover, they argue that Riddick fails to show an underlying unlawful act on which the conspiracy was based, because his discrimination claims also fail.  ECF Doc. 32 at 15.

Riddick contends that Gadberry influenced Pipkins into terminating him.  ECF Doc. 31-3 at 19.  He argues that Walker and Moore – who he asserts were present during his termination meeting – acquiesced to the decision.  ECF Doc. 31-3 at 19-20.  In support, he contends that Moore attempted to play recordings of his calls that allegedly contained call script violations, but he only played back a call "which could have been" a call tree violation; there were no calls of him violating the call script.  ECF Doc. 31-3 at 19, 21.

Under Ohio law, the tort of civil conspiracy is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages."  *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475 (Ohio 1998) (internal citation omitted).  An underlying tort is necessary to give rise to a cause of action for conspiracy under Ohio law.  *Advanced Coating Int'l, Inc.*, *v. Fla. CirTech, Inc.,* No. 5:11-CV-2107, 2012 U.S. Dist. LEXIS 104820, at *7 (N.D. Ohio July 27, 2012).

Under federal law, civil conspiracy generally arises with the deprivation of constitutional rights under § 1983.  *See Hooks v. Hooks*, 771 F.2d 935, 937, 943-44 (6th Cir. 1985).  "A civil

24

conspiracy is an agreement between two or more persons to injure another by unlawful action." *Id.* at 943-44.  To state a claim for civil conspiracy, a plaintiff must show that: "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiff[] of [his] constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Marvaso v. Sanches*, 971 F.3d 599, 606 (6th Cir. 2020) (internal quotation marks omitted).  A plaintiff cannot succeed on a conspiracy claim where there is no underlying unlawful action.  *See Wiley v. Oberlin Police Dept.*, 330 F. App'x 524, 530 (6th Cir. 2009).

Moreover, as a general rule "a corporation cannot conspire with its own agents or employees."  *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. Of Educ.,* 926 F.2d 505, 509 (6th Cir. 1991) (quoting *Doherty v. American Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984)); *see also Wellington v. Lake Hosp. Sys.*, No. 1:19-cv-0938, 2020 U.S. Dist. LEXIS 30727, at *30 (N.D. Ohio Feb. 24, 2020) (applying *Hull* to a civil conspiracy count against a hospital and its staff accused of retaliation in violation of Title VII).

As an initial matter, it is unclear what "civil conspiracy" claim Riddick raises because he has not cited any law in support of his claim.  ECF Doc. 21 at 8-10.  S&P Data cites law concerning civil conspiracy claims under both Ohio law and 42 U.S.C. §1983.  ECF Doc. 31 at 25.  And Gadberry and Pipkins cite only federal cases addressing Ohio law.  ECF Doc. 32 at 14-16.  Because of the ambiguity, the court construes the amended complaint as raising a claim under both.

Summary judgment is warranted on Riddick's civil conspiracy claim, on both Ohio and federal law grounds, because there is no genuine issue of dispute that the alleged conspiracy does not rest on an underlying tort or an unlawful action.  Fed. R. Civ. P. 56(a); *Maben*, 887 F.3d

at 258. Under Ohio law, because Riddick's discrimination claims fail, his civil conspiracy claim must as well. *Advanced Coating Int'l, Inc.,* 2012 U.S. Dist. LEXIS 104820, at *7.

Riddick's claim likewise fails under federal law. First, as to S&P Data, a corporation cannot conspire with its own employees and, thus, S&P Data could not have conspired with any of the other defendants to unlawfully terminate Riddick's employment. *Hull,* 926 F.2d at 509. Moreover, as to Gadberry and Pipkins, Riddick's claim contains a similar flaw to his state law claim. Riddick made general assertions that Gadberry and Pipkins "must have" sought his termination because of his age and gender. ECF Doc. 31-3 at 17-21. However, he acknowledged in his deposition that his belief was purely an assumption. ECF Doc. 31-3 at 18. Circumstantial evidence can support a claim for discrimination. *Allen*, 545 F.3d at 394. But, as discussed above, it does not here. Because Riddick's discrimination claims fail, he has failed to establish that an unlawful action was taken against him; accordingly, his federal civil conspiracy claim fails. *Wiley,* 330 F. App'x at 530. Moreover, even if we were to assume that Riddick was correct that Gadberry disliked him, that alone would be insufficient to constitute the "unlawful action" required by federal law. Personal dislike does not amount to discrimination. *Mazur v. Wal-Mart Stores, Inc.*, 250 F. App'x 120, 129 (6th Cir. 2007) (finding that the evidence showed "mere personal dislike and constitute[d] mere teasing that [does] not establish an actionable hostile work environment"). Thus, Riddick's federal civil conspiracy claim lacks the necessary injury resulting from an unlawful action. *Hooks*, 771 F.2d at 943-44. And summary judgment must be granted.

## IV. Order to Show Cause

On October 29, 2021, I issued an order instructing Riddick to show cause why defendants "John Doe," Snyder, Walker, and Moore should not be dismissed under Rule 4(m). ECF

Doc. 54.  Riddick filed his initial complaint on May 8, 2020 and service was initiated by the U.S.

Marshal on May 20, 2020.  *See* ECF Doc. 1; ECF Doc. 6.  On January 29, 2021, Riddick

amended his complaint and named "John Doe," Snyder, Walker, and Moore as new defendants.

ECF Doc. 21.  But he never attempted service following the amendment.  *See* CM/ECF N.D.

Ohio, case no. 1:20-CV-1000.

On November 12, 2021, Riddick responded to the show cause order.[8]  ECF Doc. 55.  He

contends that because he is IFP, he need only to identify the defendants to be served for the U.S.

Marshal to execute service.  ECF Doc. 55 at 1-2.

Under Rule 4(m) of the Federal Rules of Civil Procedure, if a defendant has not been

served within 90 days of the complaint being filed "the court – on motion or on its own after

notice to the plaintiff – must dismiss the action without prejudice against the defendant or order

that service be made within a specified time."  Fed. R. Civ. P. 4(m).  To justify the extension of

the time to facilitate service, however, a plaintiff must show good cause for the failure to serve

the defendants within Rule 4(m)'s timeframe.  *Id.*  "Good cause," generally, means "a

reasonable, diligent effort to timely effect service of process.  *Pearison v. Pinkerton's Inc.*, 90 F.

App'x 811, 813 (6th Cir. 2004).  Lack of prejudice or actual notice, or ignorance of the rules are

insufficient to show good cause.  *Johnson v. Smith*, 835 F. App'x 114, 115 (6th Cir. 2021).

Absent a showing of good cause to justify the failure, the Federal Rules of Civil Procedure

compel dismissal.  *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996).

When a plaintiff proceeds IFP, the court is obligated to issue the plaintiff's process to a

U.S. Marshal who must effectuate service upon the defendants.  Fed. R. Civ. P. 4(c)(3); *Byrd*, 94

F.3d at 219.  However, the plaintiff must have taken reasonable steps to identify for the court the

---

[8] Although termed a "Cause that the court direct that service be effected," Riddick's filing also states that
it is a response to the court's show cause order and will be construed as such.  *See* ECF Doc. 55.

defendants named in the complaint.  *Byrd*, 94 F.3d at 219.  When the plaintiff fails to provide accurate and sufficient information to effect service, however, the court's *sua sponte* dismissal of the unserved defendants is appropriate.  *Pugh v. Holden-Selby*, No. 12-12357, 2012 U.S. Dist. LEXIS 172605, at *1-2 (E.D. Mich. Nov. 7, 2012) (internal quotation marks omitted).

Riddick has not shown that he had good cause for failing to serve "John Doe," Snyder, Walker, and Moore.  Although Riddick correctly contends that, given his IFP status, the U.S. Marshal would help effectuate service, their involvement does not alleviate Riddick's burden to aid in properly serving the defendants.  *See Pugh*, 2012 U.S. Dist. LEXIS 172605, at *1-2. Unlike with his initial complaint, where Riddick provided summonses for Gadberry, Pipkins, and S&P Data, Riddick provided no summonses with his amended complaint, although he requested the forms.  *See* ECF Doc. 6; ECF Doc. 21 at 13; CM/ECF N.D. Ohio, case no. 20-cv-1000.  As a result, at most the U.S. Marshal had only the names of the individual defendants as identified in the complaint, without any further contact information.  Riddick was not entitled to sit and wait for the Marshal to perfect service.  *See Jenkins v. Mich. Dep't of Corr.*, No. 5:14-CV-11812, 2015 U.S. Dist. LEXIS 142993, at *8 (E.D. Mich. Sept. 23, 2015) ("[A] plaintiff may not remain silent and do nothing to effectuate service by the U.S. Marshals" (internal quotation marks omitted)); *see also Abel v. Harp*, 122 F. App'x 248, 252 (6th Cir. 2005) (emphasizing that the defendant "did not idly by when he knew there was a problem with service").  Further, Riddick has not offered any reason why he did not perfect service within the 90 days allowed or why he failed to provide summonses for the defendants he added by his amended complaint (he had already demonstrated he knew how to take this step when he filed his initial complaint).  *See generally* ECF Doc. 55.

Based on Riddick's failure to provide (1) the U.S. Marshal with sufficient identifying information for the new defendants or (2) any explanation for his failure to do so, Riddick has failed to establish good cause for not having served John Doe, Snyder, Walker, and Moore within the 90 days allowed.  *Pearison*, 90 F. App'x at 813; *Johnson*, 835 F. App'x at 115.  I recommend that the claims against John Doe, Snyder, Walker, and Moore be dismissed without prejudice.  *Byrd*, 94 F.3d at 219.

## V.    Conclusion and Recommendations

In summary, Riddick's motion to hold Gadberry and Pipkins in contempt (ECF Doc. 41) is DENIED, and his motion for expedited hearings on his motion for reconsideration and contempt motion (ECF Doc. 43) is DENIED.

Further, I recommend that S&P Data's motion for summary judgment and Gadberry's and Pipkins's motion for summary judgment be GRANTED because: (1) Gadberry and Pipkins are immune from liability under Title VII and the ADEA; (2) Riddick has not established a *prima facie* case for either age or gender discrimination; (3) as a matter of law, S&P Data cannot conspire with its own employees; and (4) Riddick has not offered proof that his civil conspiracy claim rests on an underlying tort or unlawful action.  I also recommend that the claims against "John Doe," Snyder, Walker, and Moore be DISMISSED without prejudice for lack of timely service.

Dated: December 22, 2021

Thomas M. Parker
United States Magistrate Judge

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See U.S. v. Walters,* 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied,* 474 U.S. 1111 (1986).